No. 6691.

STATE VS. DANIEL SHAY.

An accused person, who with full knowledge of the fact that the jury by whom he is to be tried was drawn from a list of persons, composed partly of those who had been excused from serving, goes to trial without making any objection to the composition of the jury, thereby waives his right of objection, and can not thereafter, on that ground, ask that the verdict of the jury shall be disturbed.

The question whether one of the jurors in a criminal case was, or was not disqualified to act as a juror, on the score of being too prejudiced to render an impartial verdict, is a question of fact for the lower court to determine, and of which this Court has no jurisdiction.

The place where an alleged murder was committed is set forth with sufficient certainty, when the indictment gives the name of parish in which the killing is charged to have been done, and states that it took place within the jurisdiction of the Court before whom the accused is tried.

In an indictment for murder it is not necessary to set forth the specific manner, and means of the killing. It is only necessary to charge that the accused did willfully, feloniously, and with malice aforethought kill, and murder the deceased.

It is too late to urge any objection to an indictment on account of any defect of form apparent on its face, after the jury has been sworn.

APPEAL from the Superior Criminal Court, parish of Orleans. *Whitaker, J.*

*H. N. Ogden,* Attorney General, for the State.

*J. P. Smith* and *J. H. Hagins* for defendant.

The opinion of the court was delivered by

DeBLANC, J. Daniel Shay was indicted for the murder of John McDonough. He was tried and the jury returned against him the qualified verdict of "guilty, without capital punishment. He applied for a new trial, but his application was refused. To obtain it, he relied in the lower court, and he relies here, on the grounds that—

First—No correct list of the jurors was served on him, as the only one which was served contained the names of twenty-seven jurors who—before his trial—had been excused, and he was apprised of that fact after nine of those by whom he was tried had been selected and empanelled.

If—as he states—he was taken by surprise, he ought to have then moved for a discontinuance of the trial, and insisted on his right to a correct list of the jurors who were in attendance. This he did not ask—and, by his consent to a continuation of the trial, after the discovery that many of the jurors, whose names appeared on the list served, had been excused, he waived, tacitly at least, a privilege created for the exclusive benefit of the accused.

23 A. 620 ; 14 A. 667 ; 12 A. 679 ; 6 A. 690 ; 2 A. 732.

The trial of a prisoner should be conducted—not only with a strict and unwavering impartiality—but, in the course of the trial, in composing the

State vs. Shay.

jury, in taking the evidence, in the discussion of the facts elicited and of the law applicable to the facts, those who represent the State should be liberal and fair, and take no improper advantage. In Court, as in the jury room, every rational doubt should go to the credit of the accused ; but, the generosity of the State has its limits and should not be converted into a protection to crime and criminals. One who—of his own accord—takes the chances of an acquittal by a jury, cannot—after conviction—object to that jury—otherwise, the first trial of every violator of the law would merely be to ascertain whether he should be acquitted, or— if convicted—how many causes were held in reserve to secure trial after trial.

7 A. 284 ; 8 A. 515 ; 27 A. 537.

In this, as in every one of our States, the law surrounds the prisoner with the most complete, the most protective guarantees. When brought to the bar of the court, he is not called upon to disprove the commission of the offence charged against him ; the law presumes his innocence, and—until that presumption be torn into shreds, until his guilt be established beyond any reasonable doubt—be he a robber or an assassin—he cannot be convicted, he cannot be punished. The prisoner is invested with high, constitutional and extraordinary privileges— but, for the exercise of those privileges—the State had to and did fix an hour, and—in one of the cases referred to by defendant's counsel, the court held : "If one have good ground for continuing a cause, but go into trial, and fail to make the motion, this will not present a legal claim for a new trial." ·

Hardin's Reports, p. 515.

Second—Charles Reineck, one of the jurors by whom the accused was tried, had—before the commencement of the trial—openly expressed his belief that appellant was guilty as charged, and that if he were to try him, he could not help finding him guilty—and that, when examined on his *voir dire*—the said Reineck answered that he had neither formed nor expressed an opinion as to his guilt or innocence.

If Reineck did express such an opinion, and afterwards falsely denied that he had, he certainly was an incompetent juror—for, when locked by a prejudice, the door of the mind is as closed as that of the tomb ; it may be re-opened, but seldom and by a miracle. Whatever is a good ground of challenge to a juror, is a good ground for a new trial, if the fact which would have authorized the challenge was not known until after the verdict, or until it was too late for the accused to avail himself of the knowledge of that fact.

It is, however, the peculiar province of the lower court to determine whether a juror is or was open to conviction or not. In this case, and as to Charles Reineck, that question was raised, tried and decided. It

does not appear that the district judge held that—even if proved, the disqualification urged did not constitute a legal ground for a new trial, and it does appear that he fixed a day to hear, and—on that day, heard the parties on that point.

Whether; on that trial, two, or ten witnesses were examined—whether, without additional evidence, the judge believed the juror's declaration and disbelieved the charge proffered against him—whether that charge was verified or contradicted, the record does not show. The prisoner's application is based on a question of facts : his application was passed upon and refused—the reasons for that refusal are no where mentioned, and—under our constitution, the law and jurisprudence, we are without authority to revise or reverse the decision of the lower court on this point.

C. art. 74, 26 A. 383 ; 4 A. 438—441 ; 2 A. 921 ; 6 A. 593.

Third—"The indictment—it is objected—does not, with certainty and distinctness, set forth the place where the crime is said to have been committed, or the instrument used, or the manner, or cause of the death."

In the margin of the indictment, the venue is stated as follows : *State of Louisiana, First Judicial District, Parish of Orleans.*

In the body—"*the parish of Orleans aforesaid, within the jurisdiction of the Superior Criminal Court for said parish.*" This is all that the law requires.

Rev. Statutes, Section 1062.

As the first, the second branch of this objection is untenable. In an indictment for murder, it is not necessary to set forth the manner in which and the means by which the death was caused. It is sufficient to charge—and it was done in this case, that the defendant did feloniously, wilfully and of his malice aforethought, kill and murder the deceased.

Revised Statutes, Sect. 1048.

Fourth—There is nothing in the record showing how many or what grand jurors found the indictment. The names of said jurors are not mentioned.

On the first pages of the transcript, we find the statement "that the Grand Jurors of the State of Louisiana, duly empanelled, sworn and charged to enquire in and for the body of the parish of Orleans, this day came into Court, attended by their proper officer—and there being then and there present at least twelve of their number, and upon their oath and through their foreman, presented to the Court the following true bill of indictment, which is properly endorsed by said foreman, and entered and signed by the Clerk of the Court, etc. That statement is followed by the indictment, which—in substance and in form, is perfect.

The names of the grand jurors are not in the indictment, nor in the

State vs. Shay.

written statement that at least twelve of them appeared in open Court and presented the indictment and true bill, but no such formality is required by law. Were it otherwise, it was too late after conviction, to urge any informality of that description. "Every objection to any indictment for any formal defect apparent on its face, must be taken by demurrer or motion to quash, before the jury be sworn and not afterwards."

Rev. Statutes, Sect. 1064, 22 A. 162 ; 27 A. 693.

The judgment appealed from is affirmed.